**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JASON UPSHAW** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00530-O** |
| | § | |
| **ERATH COUNTY, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION & ORDER

Before the Court are Defendants' Motion for Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 77–79) and Brief in Support (ECF No. 78), Plaintiff's Objection, Response, Appendix, and Brief in Opposition (ECF Nos. 82–85), and Defendant's Reply (ECF No. 89). Having reviewed the Parties' filings and the relevant caselaw, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I. BACKGROUND[1]

Plaintiffs Jason Upshaw ("Upshaw") and Randy Fowler ("Fowler") (collectively, "Plaintiffs") were formerly employed by the Erath County Sheriff's Office ("Sheriff's Office") as Chief Deputy Sheriff and Captain, respectively. Upshaw served approximately seventeen years with the Sheriff's Office, while Fowler served approximately fifteen years. Defendant Matt Coates ("Coates") was employed by the Erath County District Attorney's Office before his appointment as Sheriff of Erath County.

[1] Unless otherwise specified, undisputed facts are taken from Plaintiffs' Second Amended Complaint. ECF No. 41.

Plaintiffs allege that, while employed by the District Attorney's Office, Coates frequently visited the Sheriff's Office and engaged in inappropriate sexual conduct toward female employees, including making sexually explicit comments and engaging in unwanted physical contact. Plaintiffs further allege that Upshaw, together with then-Sheriff Tommy Bryant, reported Coates's conduct to Erath County District Attorney Allen Nash ("Nash"), Coates' employer. Fowler allegedly supported and participated in making the complaint. According to Plaintiffs, Nash subsequently informed Coates of their complaints, after which Coates exhibited animosity toward them.

On December 20, 2016, following Bryant's death, Coates was appointed interim Sheriff of Erath County. Plaintiffs allege that, within an hour of his appointment, Coates suspended them without pay on the stated basis that they were under investigation. Plaintiffs further allege that Coates did not explain the nature of the investigation and subsequently had them escorted from the Sheriff's Office in the presence of other County employees and officials. According to Plaintiffs, Coates also disseminated stigmatizing information about them to other County employees and local news outlets.

Plaintiffs allege that Coates subsequently terminated their employment and issued each a "General Discharge," which was reported to the Texas Commission on Law Enforcement ("TCOLE"). Defendants maintain that Coates suspended Plaintiffs pending an independent investigation conducted by TCOLE and the Texas Attorney General's Office and subsequently declined to rehire them when his new term as Sheriff began on January 1, 2017. Plaintiffs contend that their suspensions and terminations were retaliatory measures taken because of their complaints regarding Coates's conduct. They further allege that the circumstances surrounding their terminations, including the general discharge classifications and dissemination of allegedly

stigmatizing information, damaged their professional reputations and substantially foreclosed future employment opportunities in law enforcement. Although Plaintiffs allegedly requested name-clearing hearings, they contend that Defendants failed to provide them with such hearings. Plaintiffs further allege that Section 1B-15 of the Erath County Employee Handbook prohibits adverse employment actions against employees who, in good faith, report violations of County policy or federal or state law. Plaintiffs contend that this provision created a protected property interest in their continued employment and that Defendants deprived them of that interest without constitutionally adequate process.

Based on these allegations, Plaintiffs assert claims against Erath County, Coates in his individual and official capacities, and County Commissioners Dee Stephens, Herbert Brown, Joe Brown, and Scot Jackson in their official capacities. Specifically, Plaintiffs assert claims for (1) First Amendment retaliation under 42 U.S.C. § 1983; (2) deprivation of procedural and substantive due process under the Fifth and Fourteenth Amendments pursuant to § 1983; (3) and deprivation of due course of law under Article I, Section 19 of the Texas Constitution. Plaintiffs previously asserted claims under the Texas Whistleblower Act, but those claims were dismissed as time-barred.[2] Plaintiffs seek monetary damages against Coates individually and prospective equitable relief against Defendants in their official capacities, including name-clearing hearings.

Defendants filed a Motion for Summary Judgment Based on Qualified Immunity, Plaintiffs subsequently filed an Objection, to which Defendants responded. Plaintiffs also filed a Response to Defendant's Motion for Summary Judgment, and Defendants filed a Reply. The Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

---

[2] Order, ECF No. 36.

**A. Admissibility of Affidavit**

Under Federal Rule of Civil Procedure 56(c)(4), an affidavit submitted in support of or opposition to summary judgment must be made on personal knowledge, set forth facts that would be admissible in evidence, and demonstrate that the affiant is competent to testify concerning the matters asserted. FED. R. CIV. P. 56(C)(4). Further, Rule 56(c)(2) permits a party to object that material cited in support of or opposition to summary judgment cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(C)(2). Although evidence need not be presented in admissible form at the summary judgment stage, its contents must be capable of being presented in admissible form at trial. *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). Accordingly, the Court may decline to consider affidavit testimony that consists of hearsay that cannot be presented in admissible form at trial, statements outside the affiant's personal knowledge, or improper legal conclusions. *D'Onofrio v. Vacation Publications*, Inc., 888 F.3d 197, 208 (5th Cir. 2018).

**B. Motion for Summary Judgment**

The Court should grant summary judgment where the pleadings and evidence show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation modified).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must

inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, the Court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If there is no support for disputed allegations such that "reasonable minds could differ as to the import of the evidence," the Court will grant the motion. *Anderson*, 477 U.S. at 250.

**C. Qualified Immunity**

Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant invokes qualified immunity, the plaintiff bears the burden of demonstrating that the defense does not apply. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). The Court considers whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation and whether the allegedly violated right was clearly established at the time of the challenged conduct. *Lytle v. Bexar County*, 560 F.3d 404, 409–10 (5th Cir. 2009). Courts may address these inquiries in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established when existing precedent places the constitutional question beyond debate such that every reasonable official would understand that the challenged conduct violates the law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The inquiry must be undertaken

in light of the particular circumstances confronting the official rather than at a higher level of generality. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Qualified immunity applies to government officials sued in their individual capacities, but it does not shield municipalities or officials sued in their official capacities. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). Accordingly, the Court separately considers Coates's entitlement to qualified immunity and Defendants' arguments concerning municipal liability.

## III. ANALYSIS

### A. Admissibility of Affidavit

#### a. Paragraph 12

Plaintiffs first object to paragraph 12, lines 5–8, of Coates's affidavit, arguing that statements attributed to Texas Commission on Law Enforcement investigator Stan Roper ("Roper") constitute inadmissible hearsay.[3] Defendants respond that the statements are not offered for their truth, but rather to establish Coates's knowledge of the ongoing investigation when he made the employment decisions concerning Plaintiffs.[4]

Under Federal Rule of Evidence 801(c), hearsay is an out-of-court statement offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). Here, Coates testified that Roper informed him that the investigation was expanding beyond TCOLE violations and that the officers under investigation would likely lose their peace officer licenses.[5] Defendants offer these statements to establish the information available to Coates when he decided not to rehire Plaintiffs. Because Coates had personal knowledge of what Roper told him, he may testify to those statements for the limited purpose of establishing their effect on his subsequent employment decisions. The

[3] Pl.'s Obj., ECF No. 82.
[4] Defs.' Resp. to Obj., ECF No. 88.
[5] Pl.'s Exhibit J, ECF No. 82-1.

Court does not consider Roper's statements as proof that Plaintiffs committed the alleged misconduct or that the investigation substantiated the allegations against them. Accordingly, Plaintiffs' objection to paragraph 12 of Coates's affidavit is **OVERRULED**.

**b. Paragraph 13**

Plaintiffs next object to paragraph 13 of Coates' affidavit, arguing that his statements concerning whether he made false or stigmatizing charges against Plaintiffs constitute improper legal conclusions.[6] Coates asserts that he did not make any "public stigmatizing charges" against Plaintiffs.[7] Whether particular statements constitute constitutionally actionable stigmatization is a legal determination for the Court. Coates' characterization of his own conduct does not independently establish the absence of a constitutional violation.

Nevertheless, Coates may testify concerning matters within his personal knowledge, including whether he made particular statements and the contents of any communications he personally made. FED. R. CIV. P. 56(c)(4). Accordingly, Plaintiffs' objection to paragraph 13 is **SUSTAINED in part** and **OVERRULED in part**. The Court declines to consider Coates's legal characterization of his conduct but considers otherwise competent factual testimony concerning his statements and actions.

**c. Paragraphs 15–16**

Plaintiffs next object to paragraphs 15 and 16 of Coates's affidavit, arguing that his statements concerning Plaintiffs' discharge classifications conflict with his prior testimony.[8]

---

[6] Pl.'s Obj., ECF No. 82.
[7] Pl.'s Exhibit J, ECF No. 82-1.
[8] Pl.'s Obj., ECF No. 82.

Defendants respond that Plaintiffs merely dispute Coates's application of the relevant discharge criteria and have not identified a contradiction warranting exclusion.[9]

At the summary judgment stage, courts do not make credibility determinations or weigh competing evidence when resolving a motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, Coates testified that he assigned Plaintiffs general discharges because they were under investigation for potential wrongdoing. Plaintiffs dispute whether the circumstances justified that classification. But their disagreement does not establish that Coates lacks personal knowledge concerning the classification he assigned or the reasons for his decision. Nor have Plaintiffs demonstrated that his affidavit testimony directly contradicts his deposition testimony in a manner warranting exclusion. Any disagreement concerning the proper classification goes to the weight of the evidence rather than its admissibility. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161–62 (5th Cir. 2021).

Accordingly, Plaintiffs' objections to paragraphs 15 and 16 are **OVERRULED**.

#### d. Paragraph 17

Finally, Plaintiffs object to paragraph 17 of Coates's affidavit, arguing that his testimony concerning TCOLE and Sheriff's Office records violates the best evidence rule and constitutes inadmissible hearsay.[10] Under Federal Rule of Evidence 1002, an original writing generally is required to prove its contents. FED. R. EVID. 1002. Nevertheless, a witness may testify to facts

[9] Defs.' Resp. to Obj., ECF No. 88.
[10] Pl.'s Obj., ECF No. 82.

within his personal knowledge even when those facts are also reflected in a writing. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016).

Here, Coates testified that he personally hired individuals who previously received general discharges from other law enforcement agencies.[11] That testimony concerns his own hiring decisions and is based on personal knowledge. His additional statements concerning hiring decisions made by his predecessor, however, depend on the contents of records not independently established by the evidence presently before the Court. The Court therefore considers Coates' testimony concerning his hiring practices but does not rely on his characterization of his predecessor's records as independent proof of their contents. Accordingly, Plaintiff's objection to paragraph 17 is **OVERRULED** as to Coates' firsthand testimony. The Court does not consider unsupported assertions concerning the contents of records outside his personal knowledge.

### B. Motion for Summary Judgment

Having resolved Plaintiffs' evidentiary objections, the Court turns to Defendants' Motion for Summary Judgment Based on Qualified Immunity.[12] Defendants move for summary judgment on Plaintiffs' First Amendment retaliation, procedural and substantive due process, and Texas constitutional claims.[13] Plaintiffs expressly decline to contest summary judgment on their First Amendment and substantive due process claims.[14] Because Defendants seek judgment on those claims and Plaintiffs identify no genuine dispute precluding judgment, the Court **GRANTS** Defendants' Motion as to those claims. The Court addresses Plaintiffs' remaining procedural due process and Texas constitutional claims below.

#### a. Procedural Due Process

[11] Pl.'s Exhibit J, ECF No. 82-1.
[12] Defs.' Mot. for Summ. J., ECF No. 77, 78.
[13] *Id.*
[14] Pl.'s Resp. to Mot. for Summ. J., ECF No. 85.

Plaintiffs contend that Defendants deprived them of procedural due process by publicly disclosing false, stigmatizing information in connection with their discharge and subsequently denying their requests for name-clearing hearings.[15] Defendants respond that no false or stigmatizing charges were published and that Plaintiffs had adequate opportunities to clear their names.[16]

Plaintiffs advance two theories of procedural due process liability. First, Plaintiffs allege that Defendants deprived them of a protected liberty interest by publishing false, stigmatizing information in connection with their terminations without providing name-clearing hearings. Second, Plaintiffs allege that the Erath County Employee Handbook created a protected property interest in their continued employment, of which Defendants deprived them without constitutionally adequate process. The Court addresses these theories separately.

1. Liberty Interest

A public employee establishes a deprivation of liberty without due process by showing that (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard before discharge; (5) the charges were made public; (6) he requested a name-clearing hearing; and (7) his employer denied the request. *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006). The Parties principally dispute whether Defendants publicly disclosed false, stigmatizing charges against Plaintiffs and whether Plaintiffs received constitutionally adequate opportunities to clear their names.

**i. False, Stigmatizing Charges**

---

[15] *Id.*
[16] Defs.' Mot. for Summ. J., ECF No. 78; Defs.' Reply, ECF No. 89.

Plaintiffs identify newspaper articles reporting their suspensions immediately following Sheriff Bryant's death and during ongoing investigations into the Sheriff's Office.[17] Plaintiffs contend that the circumstances surrounding those disclosures falsely suggested serious misconduct, notwithstanding Coates's admitted lack of knowledge concerning the specific allegations against them.[18] Defendants maintain that the articles accurately reported Plaintiffs' suspensions and that Coates neither disclosed false information nor caused stigmatizing statements to be published.[19]

To establish a deprivation of liberty, a public employee must identify charges sufficiently stigmatizing to give rise to public scorn or a comparable badge of infamy. *See Campos v. Guillot*, 743 F.2d 1123, 1125-36 (5th Cir. 1984). Moreover, those charges must be false. *Bledsoe*, 449 F.3d at 653. Here, Plaintiffs do not dispute that they were under investigation when Coates suspended them and subsequently declined to rehire them. Indeed, Coates testified that the existence of the TCOLE investigation was the sole reason for his decision not to retain either Plaintiff.[20]

Coates further acknowledged that, at the time of the employment decisions, he possessed limited information concerning the specific allegations under investigation. He testified that he did not interview either Plaintiff before discharging them and that he did not know precisely what Fowler was alleged to have done. Although this testimony may call into question the factual basis for Coates' employment decisions, it does not establish that the existence of the investigation was falsely reported. Nor does it establish that Coates publicly accused Plaintiffs of misconduct he knew they had not committed. Plaintiffs nevertheless contend that the newspaper articles, considered in context, communicated a false implication of serious wrongdoing. The Court

[17] Pl.'s App. 61, 71.
[18] Pl.'s Resp. to Mot. for Summ. J., ECF No. 85; P. App. 92.
[19] Defs.' Reply, ECF No. 89.
[20] Pl.'s App. 74–76.

recognizes that statements may cause substantial reputational harm even when their individual factual components are accurate. But the constitutional inquiry requires more than evidence that truthful information generated adverse speculation or damaged Plaintiffs' reputations. Plaintiffs must identify a materially false, stigmatizing charge made in connection with their discharge.

Plaintiffs rely on Texas authorities recognizing defamation by implication. Those authorities, however, do not dispense with the independent requirements governing a federal procedural due process claim. The possibility that a publication may support a state-law defamation theory does not, without more, establish a deprivation of liberty under the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 701–12 (1976).

On the record presented, Plaintiffs have not identified a materially false factual communication by Coates in connection with their discharge. The articles describe the existence of investigations and the resulting employment decisions, events Plaintiffs do not dispute occurred. Although Plaintiffs contend that the surrounding circumstances invited readers to infer wrongdoing, that contention does not establish that Defendants made a false, stigmatizing charge.

**ii. Public Disclosure**

Plaintiffs' claims independently require evidence that the allegedly stigmatizing information was publicly disclosed by, or attributable to, their governmental employer. *Hughes v. City of Garland*, 204 F.3d 223, 228 (5th Cir. 2000). Plaintiffs rely on Coates' deposition testimony concerning the Sheriff's Office's procedures for communicating with the media. According to Plaintiffs, Coates acknowledged responsibility for information provided by Sheriff's Office personnel to local newspapers. Defendants respond that Coates testified only that communications from Sheriff's Office employees ordinarily required his approval, not that he personally supplied or authorized the particular information reported in the articles. The distinction is material. Coates'

authority over official communications does not itself establish that he caused the publication of a particular statement. Plaintiffs must identify evidence connecting the allegedly stigmatizing disclosure to Coates or another responsible County official.

Plaintiffs also rely on the general discharge classifications reported to TCOLE. Coates acknowledged that a general discharge could prompt additional investigation by a prospective law enforcement employer.[21] He nevertheless testified that the classification did not automatically foreclose employment and that his office had hired individuals who previously received general discharges. Even assuming that Plaintiffs' discharge classifications adversely affected their future employment opportunities, those consequences do not independently establish the public disclosure of a false, stigmatizing charge. Defendants maintain that the F-5 reports were submitted to TCOLE pursuant to statutory requirements and that Plaintiffs themselves subsequently disclosed their general discharge classifications. Under Fifth Circuit precedent, disclosure attributable solely to the employee does not satisfy the publication requirement. *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012).

Plaintiffs have not identified evidence establishing that Coates publicly disseminated their general discharge classifications as accusations of particular criminal misconduct. Nor have they established that the classifications themselves communicated a materially false charge sufficient to implicate a constitutional liberty interest. Accordingly, Plaintiffs have failed to raise a genuine dispute of material fact concerning the publication of false, stigmatizing charges attributable to Defendants.

**iii. Name-Clearing Hearings**

---

[21] Pl.'s App. 57–61.

Plaintiffs also contend that Defendants denied their requests for name-clearing hearings. The record establishes that Plaintiffs submitted requests for name-clearing hearings in June 2017.[22] Coates acknowledged receiving those requests and discussing them with County personnel and counsel.[23] Defendants do not identify a separate name-clearing hearing provided by Erath County. Rather, they contend that Plaintiffs received adequate opportunities to clear their names through subsequent administrative proceedings concerning their discharge classifications and criminal proceedings concerning the allegations against them.

The Court recognizes that the Fifth Circuit has long established a public employee's right to a name-clearing hearing when the constitutional prerequisites for such relief are satisfied. See *Rosenstein v. City of Dallas*, 876 F.2d 392, 395–96 (5th Cir. 1989). Nevertheless, the right to a name-clearing hearing does not arise merely because an employee requests one. Rather, the employee must establish the elements of a deprivation of liberty, including the publication of false, stigmatizing charges in connection with discharge. *Bledsoe*, 449 F.3d at 653. Because Plaintiffs have failed to establish a genuine dispute concerning those prerequisites, the Court need not determine whether the subsequent administrative proceedings provided constitutionally adequate substitutes for the requested hearings.

The Court does not hold that the existence of administrative proceedings necessarily satisfied Defendants' procedural obligations. Nor does it conclude that Plaintiffs' withdrawal of those proceedings automatically extinguished an otherwise established constitutional right. Instead, the Court concludes that Plaintiffs have failed to establish the underlying deprivation of liberty necessary to trigger an entitlement to a name-clearing hearing.

---

[22] Pl.'s App., 169–171.
[23] *Id*.

Although Plaintiffs have identified evidence that their suspensions and discharges attracted adverse publicity and may have impaired their future employment opportunities, they have not established a genuine dispute concerning the publication of materially false, stigmatizing charges attributable to Defendants. Without such evidence, Plaintiffs cannot establish a deprivation of a constitutionally protected liberty interest. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' liberty-interest procedural due process claims.

2. Property Interest

Plaintiffs also allege that Defendants deprived them of a protected property interest in continued employment without constitutionally adequate process. Specifically, Plaintiffs rely on Section 1B-15 of the Erath County Employee Handbook, which prohibits adverse employment actions against employees who report violations of County policy or federal or state law in good faith.[24] Defendants respond that Plaintiffs were at-will employees and that the Handbook expressly disclaims any contractual or property interest in continued employment.[25]

To establish a procedural due process violation, a plaintiff must first demonstrate that he possessed a constitutionally protected property or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). Property interests are not created by the Constitution but arise from independent sources, including state law, that establish a legitimate claim of entitlement. *Id.* at 577. Under Texas law, employment is presumed to be at will unless the employer unequivocally indicates an intent to restrict its ability to terminate employment except under clearly specified circumstances. *Montgomery County Hospital District v. Brown*, 965 S.W.2d 501, 502 (Tex. 1997).

---

[24] Second Am. Compl. ¶¶ 43, 60.
[25] Defs.' Br. 45–49, ECF No. 78.

Accordingly, an at-will employee generally possesses no constitutionally protected property interest in continued employment. *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016).

Here, the summary judgment evidence establishes that the Erath County Employee Handbook expressly preserves the at-will employment relationship. Section 1A-1 provides that all County employment is at will, that no employment contract exists between the County and its employees, and that no provision of the Handbook modifies an employee's at-will status.[26] Similarly, Section 1B-11 expressly states that the Handbook does not create any property interest in employment and reserves the County's authority to terminate employees at any time, with or without cause or notice.[27] Both Plaintiffs signed acknowledgments confirming their understanding that the Handbook did not constitute an employment contract and that their employment could be terminated at any time.[28]

Although Plaintiffs rely on the Handbook's prohibition against retaliation, that provision does not negate the Handbook's express disclaimers or otherwise establish an entitlement to continued employment. Under Texas law, a disclaimer in an employee handbook negates any implication that its personnel policies restrict the at-will employment relationship. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993). And where formal employment policies conflict with alleged informal understandings, the formal policies control. *Staheli v. University of Mississippi*, 854 F.2d 121, 125 (5th Cir. 1988).

Accordingly, Plaintiffs have failed to establish a constitutionally protected property interest in continued employment with Erath County. Because the existence of such an interest is a

[26] Defs.' App. 351.
[27] Defs.' App. 362.
[28] Defs.' App. 402–03.

necessary prerequisite to their property-interest procedural due process claim, the Court **GRANTS** Defendants' Motion for Summary Judgment as to that theory.

**b. Qualified Immunity**

Defendants argue that Coates is entitled to qualified immunity because he did not violate Plaintiffs' clearly established constitutional rights.[29] Plaintiffs respond that the right to a name-clearing hearing was well established when Coates discharged them.[30]

Qualified immunity protects government officials unless their conduct violates a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). As discussed above, Plaintiffs have established a genuine dispute concerning the deprivation of either a protected liberty interest or a protected property interest. Because Plaintiffs have not demonstrated an underlying constitutional violation, they necessarily fail to overcome Coates' qualified-immunity defense. The Court therefore need not determine whether the asserted rights were clearly established under the particular circumstances confronting Coates. Accordingly, Coates is entitled to qualified immunity, and Defendants' Motion is **GRANTED** as to Plaintiffs' § 1983 claims against Coates in his individual capacity.

**c. Municipal Liability**

Defendants next argue that Erath County cannot be held liable because Plaintiffs have failed to establish an underlying constitutional violation or an official County policy responsible for the alleged deprivation.[31] Plaintiffs respond that the challenged decisions were made by officials possessing final policymaking authority.[32]

---

[29] Defs.' Br. in Supp. of Mot. for Summ. J., ECF No. 78.
[30] Pl.'s Resp. to Mot. for Summ. J., ECF No. 85.
[31] Defs.' Br. in Supp. of Mot. for Summ. J., ECF No. 78; Defs.' Reply, ECF No. 89.
[32] Pl.'s Resp. to Mot. for Summ. J, ECF No. 85.

A municipality may be liable under § 1983 when an official policy or decision by a final policymaker causes a constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). Municipal liability, however, requires an underlying constitutional deprivation. A municipality cannot be held liable under § 1983 merely because an employee engaged in conduct that Plaintiffs believe was unfair or improper. Here, Plaintiffs contend that Coates possessed final policymaking authority over Sheriff's Office employment decisions and that his actions therefore constitute official County policy. The Court need not resolve whether Coates possessed final policymaking authority over Sheriff's Office employment decisions and that his actions therefore constitute official County policy. Plaintiffs possessed no protected property interest in continued employment. They likewise have failed to establish a genuine dispute concerning the publication of false, stigmatizing charges necessary to support their liberty-interest claims. Because Plaintiffs have failed to establish an underlying constitutional deprivation, their municipal liability claims necessarily fail. *See Correa v. Fischer*, 982 F.2d 931, 936 (5th Cir. 1993). Accordingly, Defendants' Motion is **GRANTED** as to Plaintiffs' § 1983 claims against Erath County. The official-capacity claims against Coates and the County Commissioners are, in substance, claims against Erath County itself. Because Plaintiffs have failed to establish an underlying constitutional violation, those claims likewise fail. Defendants' Motion is **GRANTED** as to Plaintiffs' § 1983 claims against all Defendants in their official capacities.

**d. Texas Constitution**

Finally, Defendants seek summary judgment on Plaintiffs' claims under Article I, Section 19 of the Texas Constitution.[33] Plaintiffs contend that those claims survive for the same reasons as

[33] Defs.' Br. in Supp. of Mot. for Summ. J., ECF No. 78.

their federal procedural due process claims.[34] Texas courts generally construe the due-course-of-law provision consistently with the Fourteenth Amendment's Due Process Clause. *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004). The Fifth Circuit likewise has recognized that the protections afforded by the Texas Constitution's Due Court of Law Clause and the federal Due Process Clause are generally the same. *See Lindquist v. City of Pasadena*, 669 F.3d 225, 238 (5th Cir. 2012).

As discussed above, Plaintiffs have failed to establish a protected property interest in continued employment or a deprivation of liberty arising from the publication of false, stigmatizing charges. Because Plaintiffs rely on the same alleged constitutional deprivations to support their state due-course-of-law claims, those claims for substantially the same reasons.

Moreover, Texas law does not recognize a private cause of action for damages arising directly under the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). Plaintiffs have failed to establish an underlying violation of Article I, Section 19 warranting such relief. Accordingly, Defendants' Motion is **GRANTED** as to Plaintiffs' claims under the Texas Constitution.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.[35] Plaintiffs' remaining claims against all Defendants are **DISMISSED with prejudice**.

Plaintiffs' evidentiary objections are **OVERRULED**, except as to paragraph 13 of Coates' affidavit, for which the objection is **SUSTAINED in part** and **OVERRULED in part**.

**SO ORDERED** this **12th day** of **November, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

[34] Pl.'s Resp. to Mot. for Summ. J, ECF No. 85.
[35] Defs.' Mot. for Summ. J., ECF No. 77.